IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ORESTES PACHECO,          )
    Plaintiff,            )
                          )
v.                        )   CIVIL ACTION NO. 12-00410-KD-M
                          )
SAM COCHRAN,              )
    Defendant.            )

**ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 51), Plaintiff's Response (Doc. 53), and Defendant's Reply (Doc. 54).

**I.**    **Background**

Plaintiff Orestes Pacheco ("Pacheco") sued Defendant Mobile County Sheriff Sam Cochran ("Cochran"): 1) in his individual capacity, for violating his Fifth and Fourteenth Amendment constitutional rights; and 2) in his official capacity, for $33,972.02 in medical bills pursuant to Ala. Code § 14-6-19.[1] (Doc. 44).

This action stems from Pacheco's May 23, 2010 arrest, and subsequent medical treatment and booking into Mobile County Metro Jail ("the jail").[2] Following his arrest, Pacheco was taken to the jail medical clinic. He was later released into the general population. On June 10,

---

[1] Which provides that: "[n]ecessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves."

[2] While Pacheco was incarcerated at the Mobile County Metro Jail, there was in place a contract between Corrections Medical Services, Inc. ("CMS"), Mobile County, and the Sheriff of Mobile County. (Doc. 51-6). Pursuant to this contract, CMS was required to provide off site emergency medical treatment to inmates as well as hospitalization if found necessary by treating physicians, and would bear the cost of such services up to $10,000. (Id.) CMS paid $10,000 towards Pacheco's off-site medical treatment, and the Sheriff's office reimbursed CMS an additional $11,104.00. (Id.)

1

2010, Pacheco was returned to the medical clinic at the jail as he was observed to be "listless." He deteriorated and was transported on June 11, 2010 to the Mobile Infirmary emergency room where he was admitted. (Doc. 51-9). On June 12, 2010, Pacheco was released from custody. (Doc. 51-5 at 3 (Aff. Stallworth)).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

### III. Discussion

#### A. Individual Capacity -- Section 1983 claim

Pursuant to Section 1983, Pacheco alleges an individual (not official) capacity claim against Sheriff Cochran. Namely, that Sheriff Cochran is liable, as a supervisor, due to his deliberate indifference to Pacheco's serious medical needs (renal failure). Pacheco alleges that this indifference is shown through the jail's widespread and longstanding custom or practice of providing inadequate monitoring and reporting on the condition of suicidal inmates. Pacheco also alleges that deliberate indifference is supported because there the inmates are subjected to conditions of confinement that exacerbate their clinical problems.

To establish liability in an individual capacity claim under Section 1983, a plaintiff must show that an official, acting under color of state law, deprived the plaintiff of a federal constitutional right. Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005). Supervisory

officials are not liable, however, "for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Supervisors can be held personally liable when: 1) the supervisor personally participates in the alleged constitutional violation; or 2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Mann v. Taser, Int'l, Inc., 588 F.3d 1291, 1308 (11th Cir. 2009). Otherwise, the supervisor is entitled to qualified immunity. Hartley, 194 F.3d at 1268. The record is clear that Sheriff Cochran did not personally participate in the alleged constitutional violation and Pacheco does not even allege as such. (Doc. 51-7 at 12). As such, Pacheco's claim rests on the existence of a "causal connection."

A "causal connection" can be established 1) "when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[,]" or 2) "when a supervisor's 'custom or policy…result[s] in deliberate indifference to constitutional rights[,]'" or 3) "when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Cottone, 326 F.3d at 1360. However, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is *extremely rigorous*." Id. (citation omitted) (emphasis added). See also Mann, 588 F.3d at 1308 (same). Moreover, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley, 193 F.3d at 1269.

Pacheco asserts that Sheriff Cochran was deliberately indifferent to his constitutional

4

rights, as evidenced by his failure to respond to his serious medical needs (renal failure) due to the jail's alleged systematic and widespread practice of providing inadequate monitoring and reporting on the condition of mentally ill inmates as well as the practice of subjecting them to counter-therapeutic conditions of confinement. Pacheco asserts in particular, the constitutional violation is the failure to provide "adequate levels of supervision and appropriate documentation of cell checks" as this resulted in the failure to note or report his deterioration over time while he was an inmate at the jail. For example, Pacheco alleges that his renal failure was "festering and developing" during the time officers were noting his behavior "but doing nothing to insure" it would not cause serious injury. (Doc. 53-2).

As support for his "widespread abuse" assertion, Pacheco relies upon a January 15, 2009 letter from the DOJ addressed to Sheriff Cochran (Doc. 53-4) regarding the findings of an investigation into the conditions at the jail – including, in part, constitutional inadequacies in the level of care provided in responding to inmates' serious medical needs. According to Pacheco, while some were corrected, problems that threatened the safety of inmates suffering from mental illness remained, and these uncorrected problems, individually or in combination, led to his dehydration and hospitalization. Pacheco also relies upon the DOJ's October 18, 2012 letter (Doc. 53-5), assessing 2012 conditions at the jail, which noted that despite some improvements having been made, "a number of practices" at the jail "work in concert to create conditions of confinement for inmates with mental illness…that fail to meet minimum constitutional standards." (Doc. 53-5 at 5).

Even with these 2 letters, Pacheco has not established deliberate indifference by Sheriff Cochran. At the outset, the 2012 letter was issued 2 years after Pacheco was released.

Additionally, the 2012 letter acknowledged that improvements in training and supervision had been made (since the first letter issued), and that officers had received at least 80 hours of initial training in their first year of service, and that the Sheriff's Department had improved supervision. (Doc. 53-5 at 5). The letter referenced criticisms and suggestions in general terms, and there were no specific instances cited where an inmate was injured and/or deprived of medical treatment because of any of the DOJ Investigator's criticisms.

Moreover, Pacheco has submitted no evidence showing that the alleged problems, set forth in the letter, proximately caused his specific injuries. Rather, the record reveals that Pacheco was continually observed by the corrections officers and medical personnel, and continuously received medical treatment. Pacheco's contention, that the problems discussed in the 2012 letter, caused his dehydration and hospitalization, is nothing more than speculation and conjecture. Further, corrective measures had been taken at the jail to address problems which had occurred before Sheriff Cochran's 2006 election. In sum, there is no evidence that as of 2010, when Pacheco was incarcerated, Sheriff Cochran was on notice of any widespread abuses, and certainly nothing that was obvious, flagrant, rampant and of continued duration. Accordingly, Defendant's motion is **GRANTED** as to this claim, which is due to be dismissed.

### B.     Pacheco's State Law Claim: Ala. Code § 14-6-19

Pursuant to Ala. Code § 14-6-19, Pacheco seeks recovery of $33,972.02 in medical bills from Sheriff Cochran (in his official capacity). (Doc. 44). Although this Court has supplemental jurisdiction over this state law claim, as the federal claim has been dismissed, the Court declines to exercise supplemental jurisdiction in this instance.[3] See, e.g., Arnold v.

---

[3] 28 U.S.C. § 1367(c)(1)-(4) identifies the following four scenarios under which a district court may decline supplemental jurisdiction: 1) the claim raises a novel or complex issue of State law, 2) the claim

Tuskegee Univ., 212 Fed. Appx. 803, 811 (11th Cir. 2006) (stating that "[w]hen the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims[]"); Shotz v. City of Plantation, Fla., 344 F.3d 1161 (11th Cir. 2003) (providing that "district courts can decline to exercise [supplemental] jurisdiction ... for a number of valid reasons ... 'district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity[]") (internal citations omitted)). Accordingly, Pacheco's Section 14-6-19 state law claim is hereby **DISMISSED without prejudice.** Dukes v. State of Ga., 212 Fed. Appx. 916, 917 (11th Cir. 2006) (holding that if the district court decides to dismiss pendent state-law claims, "then they should be dismissed without prejudice so that the claims may be refiled in the appropriate state court[]").

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 51) is **GRANTED** as to Pacheco's constitutional claim, and is **MOOT** as to Pacheco's state law claim as said claim is **DISMISSED without prejudice.**

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **6th** day of **January 2014.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

substantially predominates over the claim or claims over which the district court has original jurisdiction, 3) the district court has dismissed all claims over which it has original jurisdiction, or 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. See, e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (providing that "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial... the state claims should be dismissed as well[]").